IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>CEC ENTERTAINMENT HOLDINGS, LLC,<br><br>Reorganized Debtor.[1] | Chapter 11<br><br>Case No. 20-33167 (MI) |

**MOTION OF THE CEC ENTERTAINMENT GUC TRUST TO
ESTABLISH ALTERNATIVE DISPUTE RESOLUTION PROCEDURES
TO RESOLVE LITIGATION CLAIMS AND GRANTING RELATED RELIEF**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Advisory Trust Group, LLC, solely in its capacity as trustee (the "Trustee") of the CEC Entertainment GUC Trust (the "Trust"), by and through its undersigned counsel, hereby submits this (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing the implementation of the alternative dispute resolution procedures described herein and attached as Exhibit 1 to the Proposed Order (collectively, the "ADR Procedures"), to facilitate the efficient resolution of certain prepetition claims against the Debtors or Indemnitees (as defined in the ADR Procedures) set forth on

---

[1]   The chapter 11 cases of the following affiliates of the Reorganized Debtor were closed effective as of January 6, 2021: BHC Acquisition Corporation; CEC Entertainment Concepts, L.P.; CEC Entertainment, Inc.; CEC Entertainment International, LLC; CEC Entertainment Leasing Company; CEC Leaseholder, LLC; CEC Leaseholder #2, LLC; Hospitality Distribution Incorporated; Peter Piper Holdings, Inc.; Peter Piper, Inc.; Peter Piper Texas, LLC; Peter Piper Mexico, LLC; Queso Holdings Inc.; SB Hospitality Corporation; SPT Distribution Company, Inc.; and Texas PP Beverage, Inc. *See* Case No. 20-33163, Docket No. 1541.

Exhibit A to the ADR Procedures (collectively, the "Litigation Claims") for purported liability related to: (i) personal injuries and wrongful death, including any related property damage (the "Personal Injury Claims"); (ii) wrongful employment practices or acts (the "Employment Claims"); and (iii) civil rights violations and discrimination (the "Discrimination Claims"). In support of the Motion, the Trust respectfully represents:

## PRELIMINARY STATEMENT

1. The Trust seeks Court approval of the ADR Procedures to facilitate the efficient resolution of the Litigation Claims. Since its inception, the Trust has been working to resolve the significant number of Litigation Claims filed against the Debtors' estates. Although the Trust has materially reduced the total universe of Litigation Claims, there are still 79 unresolved Litigation Claims totaling approximately $17.4 million, not including unliquidated amounts. The Trust believes a streamlined dispute resolution process will reduce costs for all interested parties and maximize distributable value for holders of allowed unsecured claims.

2. The ADR Procedures are intended to speed the resolution of the Litigation Claims while sparing the time and costs attendant to litigation and safeguarding the claimants' due process rights. Specifically, the ADR Procedures will allow the Trust to engage in an offer and exchange process with the goal of consensually resolving the Litigation Claims. If the offer and exchange process is not successful, the parties will proceed to mediation. If the ADR Procedures do not result in a consensual resolution, the claimant may ultimately seek to modify the Plan's injunction to prosecute the action and pursue any available insurance proceeds.

3. Many of the Litigation Claims are contingent, at least partially unliquidated and present complex legal and factual issues. Although the Debtors have insurance that may cover a portion of some of the claims, the vast majority of Litigation Claims will not exceed the applicable self-insured retention amounts of $350,000 and $500,000 (depending on

the type of claim). To the extent such claims are allowed and are not covered by insurance, the claimants will hold a general unsecured claim entitled to a distribution from the Trust pursuant to the terms of the Plan. With respect to claims that implicate insurance coverage, the ADR Procedures allow the Debtor's applicable insurance providers an opportunity to participate in the process. As such, the ADR Procedures appropriately balance the claimants' desire to resolve and liquidate their claims with the interests of the insurance providers, while preserving the Trust's limited resources.

4. Prior to filing this Motion, the Trust sought the input of ACE American Insurance Company and Federal Insurance Company (together and collectively with each of their affiliates and the predecessors and successors of any of the foregoing, the "Chubb Companies"), the Debtors' general liability insurer. The ADR Procedures and Proposed Order incorporate certain comments from the Chubb Companies. The Trust will work to resolve any outstanding issues in advance of the hearing on the Motion to best position the Trust to expeditiously resolve these claims.

**JURISDICTION AND VENUE**

5. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article XI of the *Second Amended Joint Chapter 11 Plan of CEC Entertainment, Inc. and its Debtor Affiliates* filed November 4, 2020 (as confirmed, the "Plan").[2] This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Case No. 20-33163, Docket No. 1246. Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

3

6. The statutory bases for the relief requested herein are set forth in section 105(a) of the Bankruptcy Code, Rules 7016 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), and Section S of the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* (the "Complex Case Procedures").

## BACKGROUND

**A.  General Background**

7. On June 24, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. From and after the Petition Date, each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. As of December 2019, the Debtors operated 741 family entertainment and dining centers under the "Chuck E. Cheese" and "Peter Piper Pizza" names, including 186 under franchise arrangements, across 47 states and 16 foreign countries and territories. As of the Petition Date, the Debtors' workforce comprised approximately 15,000 employees in the operation of the Debtors' venues and approximately 276 corporate employees.

9. On December 15, 2020, the Court entered the *Findings of Fact, Conclusions of Law, and Order Confirming Second Amended Joint Chapter 11 Plan of CEC Entertainment, Inc. and Its Debtor Affiliates* (the "Confirmation Order").[3] The Plan became effective on December 30, 2020 (the "Effective Date").[4]

---

[3]   Case No. 20-33163, Docket No. 1495.

[4]   Case No. 20-33163, Docket No. 1528.

4

10. The Plan and Confirmation Order provide for the establishment of the Trust on the Effective Date according to the terms and conditions of the GUC Trust Agreement (the "Trust Agreement"), at which time the Trustee was appointed to administer the Trust.

11. In accordance with the Plan, Confirmation Order and Trust Agreement, the Trust was established to administer certain post-Effective Date responsibilities under the Plan for the benefit of holders of Allowed General Unsecured Claims, including: (i) reviewing, reconciling, allowing, objecting to, and resolving all Disputed General Unsecured Claims, (ii) making distributions to holders of Allowed General Unsecured Claims, and (iii) otherwise administering the GUC Trust Assets.[5]

### B. Claims Reconciliation Background

12. On August 28, 2020, the Court entered the *Order (I) Establishing Deadline to File Proofs of Claim and (II) Approving Form and Manner of Notice Thereof* establishing, among other deadlines, October 1, 2020 as the deadline for each person or entity other than governmental units, to file proofs of prepetition claims (the "General Bar Date").[6] Notice of the General Bar Date was mailed to all known creditors and published in the national edition of the *New York Times* on September 11, 2020.[7]

13. The register of claims prepared by Prime Clerk LLC, reflects that more than 1,700 proofs of claim have been filed in the Debtors' chapter 11 cases, excluding claims listed on the Debtors' schedules of assets and liabilities.

---

[5] Plan, § 5.14(b); Trust Agreement § 3.2.12.
[6] Case No. 20-33163, Docket No. 747.
[7] Case No. 20-33163, Docket Nos. 832, 908.

14. The Trustee and its professionals have been reviewing and analyzing General Unsecured Claims since the Effective Date. This process includes identifying categories of claims that may be targeted for disallowance, expungement and/or modification. The Trust has substantially completed its reconciliation of all General Unsecured Claims filed against the Debtors, other than the Litigation Claims, which the Trust seeks to resolve pursuant to the implementation of the ADR Procedures.

C. **The Litigation Claims**

15. In the course of their business, the Debtors were subject to numerous Personal Injury Claims asserted by customers and other third-parties, as well as certain Employment Claims and Discrimination Claims asserted by current and former employees and third-parties. As of the Petition Date, approximately 120 lawsuits or other proceedings were pending against the Debtors.[8] Approximately 90 proofs of claim aggregating approximately $70.8 million (not including unliquidated amount) were filed against the Debtors with respect to the Litigation Claims.[9]

16. Section 10.6(a) of the Plan (the "Plan Injunction") prohibits the commencement or continuation of any action or proceeding against the Debtors, the Reorganized Debtors, their estates, the Trust, Trustee, or the property of any of the foregoing.[10] Accordingly, the Plan Injunction bars holders of Litigation Claims from taking any action in a nonbankruptcy forum with respect to their claims absent an order from the Court.

---

[8] *See* Docket Nos. 517-33, 562-65.

[9] This amount includes duplicative claims and claims that were amended and superseded by later filed proofs of claim.

[10] *See* Plan, § 10.6(a).

17. The Debtors maintain insurance policies with certain insurers, including the Chubb Companies and Beazley Syndicates (together with the Chubb Companies, the ("Insurers"), that may provide coverage with respect to certain of the Litigation Claims. Generally, the Debtors' insurance policies provide a self-insured retention (the "SIR") of $350,000 per incident for Personal Injury Claims and $500,000 per incident for Employment Claims and Discrimination Claims (collectively, the "SIR Limits"). The Debtors and their estates are effectively insured only to the extent that defense costs plus any judgment exceed the applicable SIR Limit.[11] Upon information and belief, none of the applicable insurance policies provide for the payment of a deductible.

18. Since its formation, the Trustee and its professionals have endeavored to resolve the Litigation Claims informally. To that end, the Trust has entered into stipulations with various claimants holding Litigation Claims that either (a) agreed to an Allowed General Unsecured Claim on account of such Litigation Claim, or (b) modified the Plan Injunction to allow the claimant to proceed with its state court action, in exchange for a waiver of its Litigation Claim against the Debtors' estates.[12]

19. As of the date of this Motion, there are 79 unresolved Litigation Claims that aggregate approximately $17.4 million, not including contingent and unliquidated amounts. The ultimate resolution of the Litigation Claims, and the costs associated with liquidating or disputing such claims, could materially impact distributions to holders of Allowed General

---

[11] For the avoidance of doubt, the summary of the insurance policies herein is for descriptive purposes only and is not intended to be binding on the Trust or the Insurers, or constitute either party's position with respect to the proper interpretation and meaning thereof. For a complete and accurate explanation of the terms and conditions of the insurance policies, reference should be made to the actual insurance policies and related agreements.

[12] *See, e.g.,* Docket Nos. 99, 106, 279, 376.

Unsecured Claims. Accordingly, the Trust believes it is in the best interests of unsecured creditors and the holders of Litigation Claims to implement uniform procedures.

20. The Trust recognizes the complex legal issues at the intersection of bankruptcy and insurance law and its impact on not only the holders of Litigation Claims, but the Debtors' Insurers. The Trust is also cognizant of the probable impact on unsecured creditor recoveries of protracted litigation potentially across multiple jurisdictions. The Trust believes that implementation of the ADR Procedures appropriately balances these interests.

## SUMMARY OF THE ADR PROCEDURES[13]

21. In an effort to create an efficient process to resolve Litigation Claims without unfairly depriving Claimants of their due process rights, the Trust proposes the following ADR Procedures.[14]

    a)     ADR Injunction. To implement the ADR Procedures and ensure that parties comply, all claimants will be enjoined from commencing or continuing any action or proceeding in any manner or any place, including the Court, seeking to establish, liquidate, collect or otherwise enforce any Litigation Claim against any Debtor or Reorganized Debtor other than through the ADR Procedures. The ADR Injunction shall be in addition to, and cumulative with, the Plan Injunction.

---

[13] Capitalized terms used in this summary and not otherwise defined herein shall have the meaning ascribed to such terms in the ADR Procedures. This summary is qualified by the terms of the ADR Procedures and parties should review the terms of the ADR Procedures in their entirety for a complete understanding. In the event of any inconsistencies or conflict between this summary and the terms of the ADR Procedures set forth on Exhibit 1 to the Proposed Order, the terms of the ADR Procedures shall control.

[14] For the avoidance of doubt, the following claims shall ***not*** be subject to the ADR Procedures (collectively, the "Excepted Claims"): (a) workers' compensation claims; (b) claims where there is a judgment entered or settlement fully executed by the applicable parties; (c) direct action claims against the Debtors' Insurers under applicable non-bankruptcy law; (d) claims where the automatic stay and/or Plan Injunction has been modified by stipulation or final order of the Bankruptcy Court; (e) any claims or actions relating to any claims between the Insurers on the one hand, and the Debtors, on the other, including, but not limited to, any action relating to the claims of the Insurers or actions relating to any and all collateral provided by the Debtors (or their predecessors) to the Insurers (f) any declaratory judgment actions regarding insurance coverage issues and (g) claims for subrogation, contribution, or indemnification held by Insurers.

b) <u>Preliminary Notice to Insurers</u>. Before serving an ADR Notice (as defined below) with respect to any Litigation Claim that is a Covered Claim,[15] the Trust shall provide any applicable Insurer Party with notice of its intent to make subject to the ADR Procedures any Litigation Claim that may be a Covered Claim (each, an "<u>Advance Notice</u>") and provide the Insurer Parties with any and all claim-related information, including any information reasonably requested by the Insurer Parties in the ordinary course (collectively, the "<u>Claim Information</u>"). The Advance Notice shall also include any Immediate Claim Settlement Offer (as defined below) that the Trust proposes to make to the Claimant.

c) <u>Stage 1: Offer Exchange Procedures</u>. Stage 1 of the ADR Procedures requires the Claimant, the Trust and, when applicable with respect to Covered Claims, the Insurer Parties (collectively, the "<u>Exchange Parties</u>") to exchange information and settlement offers,[16] providing the Exchange Parties the opportunity to resolve the Litigation Claim on a consensual basis without any further litigation (the "<u>Offer Exchange Procedures</u>"):

   1. <u>ADR Notice</u>: Within, (a) with respect to Covered Claims where an Insurer has elected to participate in these ADR Procedures, 30 calendar days of the Trust's receipt of a Participation Notice from the applicable Insurer, and (b) with respect to all other Litigation Claims, 30 calendar days of entry of the ADR Order, the Trust will mail and email, to the extent an email address is provided in the applicable proof of claim, a notice (the "<u>ADR Notice</u>") to the claimants on the Original Litigation Claims List, and their counsel, if known. The ADR Notice will (i) make an Immediate Claim Settlement Offer, and/or (ii) require the Claimant to return the ADR Notice with the Claim Information and Settlement Demand Form and provide supporting claim information. The ADR Notice shall (i) disclose the applicable Insurance Policies, if any, that the Trust believes may provide coverage for the Litigation Claim, and (ii) require the Claimant to respond to the ADR Notice via mail and/or email no later than 21 calendar days after the date of the ADR Notice (the "<u>Claimant Response Deadline</u>").

---

[15] A Covered Claim is a Litigation Claim that is or could reasonably be expected to be covered, in whole or in part, by any applicable Insurance Policy. Covered Claims include claims for which (i) the demand in a proof of claim or in the Claimant Demand (as defined in the ADR Procedures) exceeds the applicable self-insured retention, or (ii) the information in a Claimant's proof of claim reasonably indicates that an Insurer may be responsible for payment, in whole or in part.

[16] For the avoidance of doubt, except as set forth in these ADR Procedures or as required by the Insurance Policies, the Insurer Parties shall have no duty to exchange information with Claimants or the Trust.

2. <u>Failure to Respond to ADR Notice</u>. Failure to sign and return the Immediate Claim Settlement Offer or to complete the Claim Information and Settlement Demand Form (defined in the ADR Procedures) by the Claimant Response Deadline shall result in the Claimant being deemed to have accepted the Immediate Claim Settlement Offer and the Litigation Claim shall be allowed in the amount and classification of the Immediate Claim Settlement Offer without any further action by the Exchange Parties or the Court. To the extent the Trust did not make an Initial Settlement Offer, any Claimant who does not timely return the completed Claim Information and Settlement Demand Form, unless otherwise agreed to in writing by the Trust, (i) shall not be entitled to relief from the Plan Injunction, and (ii) may have its Litigation Claim disallowed in accordance with Section V of the ADR Procedures.

3. <u>Trust Response</u>: Within 45 calendar days after receipt by the Trust of a Claimant Demand, or as soon thereafter as is practicable, the Trust will serve the Trust Response, which may (a) accept the Claimant Demand, (b) make a counter-offer to settle the Litigation Claim (each a "<u>Trust Counter-Offer</u>"), (c) request additional information, or (d) deny liability entirely.

4. <u>Claimant's Reply</u>: Each claimant shall have 21 calendar days after service of the Trust Counter-Offer within which to reply (the "<u>Reply Deadline</u>"). If a Trust Counter-Offer is accepted, the Litigation Claim shall be allowed as set forth in Section IV.G. of the ADR Procedures. If a Trust Counter-Offer is rejected and Claimant makes a counteroffer, the Trust has the option of (i) accepting the counteroffer, (ii) making a further counteroffer and continuing the offer-exchange process in accordance with the Offer Exchange Procedures, or (iii) advancing resolution of the Litigation Claim to mediation on notice to the Claimant and the applicable Insurer with respect to a Covered Claim.

d) <u>Stage 2: Mediation Procedures</u>. If the Offer Exchange Procedures do not result in settlement, the Trust shall serve a mediation notice (the "<u>Mediation Notice</u>"). With respect to any Covered Claims, the Trust shall also serve (at the time served upon the Claimant) the Mediation Notice on any applicable Insurer. Within 21 calendar days of service of the Mediation Notice, the Insurer shall advise the Trust in writing if it elects to participate in the Mediation Procedures with respect to a Covered Claim.

e) <u>Stage 3: Relief from the Plan Injunction</u>. If the mediation does not result in a settlement, a Claimant may then seek relief from the Plan Injunction by filing a motion with the Court, and the Trust, the Reorganized Debtors and applicable Insurer may oppose such relief, or the Plan Injunction may be modified by stipulation between the Trust and Claimant.

  f) <u>Litigation</u>. If a Claimant obtains an order modifying the Plan Injunction, litigation shall proceed in either (a) the non-bankruptcy forum in which the Litigation Claim was pending on the Petition Date, if any, subject to the Trust's right to seek removal or transfer of venue, or (b) if the Litigation Claim was not pending in any forum on the Petition Date, then in the United States District Court for the Southern District of Texas or such other non-bankruptcy forum that has jurisdiction over the Litigation Claim.

  g) <u>Failure to Comply with ADR Procedures</u>:  If, absent written agreement with the Trust, a Claimant fails to comply with the ADR Procedures, negotiate in good faith, or cooperate with the Trust, the Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or an abandonment of or failure to prosecute the Litigation Claim, or both.  Upon such findings, the Court may, among other things, disallow and expunge the Litigation Claim, in whole or in part, or grant such other remedy as is just and proper upon motion or objection by the Trust, which motion or objection may be done on an omnibus basis.

  22. The Insurer Parties will have the right to participate in any discussions, negotiations, dispute resolutions, mediations and litigation under the ADR Procedures solely to the extent permitted in the ADR Procedures.  If the applicable Insurer Party participates in a particular stage, the Insurer shall be bound by the result, subject to the terms and conditions of the Insurance Policies and applicable non-bankruptcy law; *provided*, *however*, that the Insurers retain all rights, claims and defenses against parties other than the Trust and the applicable Claimant.  With respect to Covered Claims, if the Insurer elects to participate in an applicable stage of the ADR Procedures, the Trust shall not make or accept any settlement offers without the prior written consent of the applicable Insurer Party and shall take direction from the applicable Insurer Party with respect to the amount of such settlement offers; *provided, however*, that if the settlement does not exceed the SIR Limit, the Trust may proceed to make or accept settlement offers without the consent of the applicable Insurer Party.

11

23. The ADR Procedures provide that before seeking relief from the Plan Injunction to pursue a Litigation Claim in a non-bankruptcy forum, the Claimant must in good faith participate in the ADR Procedures. Any settlement that is reached, or any judgment that may thereafter be awarded after the Plan Injunction is lifted, will either be (i) allowed as a nonpriority General Unsecured Claim and treated in accordance with the Plan up to the applicable SIR Limit plus that portion, if any, that exceeds the aggregate amount payable by the Insurer(s) under the applicable Insurance Policy(ies); or (ii) paid by the Insurer(s) in accordance with the applicable Insurance Policy(ies) for that portion, if any, exceeding the SIR Limit, up to the aggregate amount payable by the Insurers under any applicable Insurance Policy(ies).

24. The goal of the ADR Procedures is to establish a streamlined process for the resolution of Litigation Claims. This will serve the dual interests of the Trust in minimizing the expense and preserving the distributable value ultimately available.

## RELIEF REQUESTED

25. The Trust respectfully requests entry of the Proposed Order attached hereto as Exhibit A, approving and authorizing the Trust to implement the ADR Procedures attached as Exhibit 1 to the Proposed Order.

## BASIS FOR RELIEF

26. This Court has authority to authorize the establishment of mandatory alternative dispute resolution procedures and to grant the related relief requested herein. Settlements are favored in bankruptcy to facilitate the expeditious administration of claims and compromises.[17] Courts increasingly prefer the use of alternative dispute resolution, such as

---

[17] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (compromises and settlements are "a normal part of the process of reorganization."); *Matter of Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 354 (5th Cir. 1997) ("[C]ompromises are a normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated and costly.").

mediation, as it serves as an "orderly and efficient mechanism" for the resolution of complex bankruptcy claims and proceedings.[18] Indeed, the Complex Case Procedures approved by this Court contemplate the use of mediation of any issue arising in an adversary proceeding, contested matter or otherwise, with or without obtaining an order of the Court.[19]

27. This Court is also authorized under section 105 of the Bankruptcy Code to approve the ADR Procedures. Under section 105(a), "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."[20] This provision supports the use of alternative dispute resolution procedures in bankruptcy cases for the expeditious resolution of disputed claims.[21] In addition, bankruptcy courts are empowered to "issue an order … prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."[22]

28. The ADR Procedures are also appropriate pursuant to Bankruptcy Rules 7016 and 9019(b). While Bankruptcy Rule 7016 generally applies to pretrial matters in adversary proceedings, courts have permitted the implementation of similar ADR procedures to assist in resolving potentially difficult or protracted actions that may involve complex issues,

---

[18] *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 733 (5th Cir. 1995); *In re El Paso Electric Co.*, 77 F.3d 793 (5th Cir. 1996) (appointing mediator to resolve a plan negotiation impasse).

[19] *See* Complex Case Procedures, § S.

[20] 11 U.S.C. § 105(a).

[21] *See In re A.H. Robins Co.*, 88 B.R. 742, 752 (Bankr. E.D. Va. 1988) (holding that 28 U.S.C. § 1334, section 105 of the Bankruptcy Code and the equitable power of the court permit approval of the channeling provisions, which included alternative dispute resolution procedures, to assist in the efficient administration of the debtors' estates and ensure an orderly and fair distribution to claimants*)*; *In re Keene Corp.*, 168 B.R. 285, 292 (Bankr. S.D.N.Y. 1994) ("Under 11 U.S.C. § 105(a), the Court can 'use its equitable powers to assure the orderly conduct of the reorganization proceedings.'") (*quoting In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y. 1987)).

[22] 11 U.S.C. § 105(d)(2).

multiple parties, difficult legal questions or unusual proof problems.[23] Court have similarly looked to Rule 9019(b) as authority in approving ADR procedures.[24] Finally, courts in this and other jurisdictions have granted similar relief in other large chapter 11 cases.[25]

29. Failure to implement appropriate ADR procedures will result in protracted litigation that will, in the first instance, require the parties and this Court to address a number of threshold issues including the claimants' right to proceed with litigation to liquidate their claims and the availability of insurance coverage under applicable law.[26] If the Court ultimately allows some or all of the claimants to proceed to liquidate their Litigation Claims, the result will be costly litigation, potentially across multiple jurisdictions, that would deplete the Trust's assets and distributable value for holders of Allowed General Unsecured Claims.

---

[23] *See* Fed. R. Civ. Pro. 16(c)(2)(L); *see, e.g., Matter of Sargeant Farms, Inc.*, 224 B.R. 842, 846 (Bankr. M.D. Fla. 1998) (holding that Bankruptcy Rule 7016 and Federal Rule 16 provide authority to approve ADR procedures); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) [Docket Nos. 12820, 12855] (E.D. Va. March 18, 2013) (applying Bankruptcy Rule 7016 in approving ADR procedures).

[24] *See e.g., In re Buffets, LLC*, No. 16-50557 (RBK) [Docket Nos. 675, 1377] (Bankr. W.D. Tex. Oct. 17, 2016) (approving ADR procedures for resolution of personal injury claims pursuant to Bankruptcy Rule 9019); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 120 n. 16 (Bankr. S.D.N.Y. 2010) (noting ADR procedures were approved by the court pursuant to Bankruptcy Rule 9019(b)).

[25] *See e.g., In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002) (mandating alternative dispute resolution procedures for the liquidation of certain outstanding claims); *In re NPC International, Inc.*, No. 20-33353 (DRJ) [Docket No. 1714] (Bankr. S.D. Tex. May 25, 2021) (approving alternative dispute resolution procedures for resolution of personal injury claims and employment related claims); *In re Buffets, LLC*, No. 16-50557 [Docket Nos. 675, 1377] (Bankr. W.D. Tex. Oct. 17, 2016) (same); *In re Eagle Bus Mgf., Inc.*, 134 B.R. 584, 591 (Bankr. S.D. Tex. 1991) (approving ADR procedures for resolution of personal injury, property damage, and workers' compensation claims); *see also In re Circuit City Stores, Inc.*, [Docket Nos. 12820, 12855] (Bankr. E.D. Va. Mar. 18, 2013) (approving alternative dispute resolution procedures); *In re Overseas Shipholding Group, Inc.*, No. 12-20000 (PJW) [Docket No. 2165] (Bankr. D. Del. Dec. 19, 2013) (same)*; In re Hostess Brands, Inc.*, No. 12-22052 (RDD) [Docket No. 1085] (Bankr. S.D.N.Y. June 11, 2012) (same).

[26] *See, e.g., Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51 (5th Cir. 1993) (addressing whether discharge prevented medical malpractice plaintiff from pursuing lawsuit to collect judgment solely from the proceeds of malpractice liability policy); *Pak-Mor Mfg. Co. v. Royal Surplus Lines Ins. Co.*, 2005 WL 3487723 (W.D. Tex. Nov. 3, 2005) (addressing insurance providers obligation to make payment prior to exhaustion on self-insured retention).

30.     Implementation of the ADR Procedures allow for the Trust to resolve the Litigation Claims in an expeditious and efficient manner for the benefit of all stakeholders. Specifically, the ADR Procedures are designed to: (i) minimize the time and cost that would be required to litigate the claims; (ii) provide the Claimants with the opportunity to promptly resolve their claims, which in many circumstances the Court will not be able to liquidate; and (iii) reduce the cost to the Trust of protracted litigation. Given the substantial size of the claims pool, and the large number of Litigation Claims filed, the Trust believes that the ADR Procedures are a fair and efficient mechanism to resolve disputed claims. Accordingly, the relief requested in this Motion is warranted and in the best interest of the Debtors' estates and their creditors.

## NOTICE

31.     Notice of this Motion has been provided to: (i) the Reorganized Debtors; (ii) the United States Trustee for the Southern District of Texas; (iii) all parties who have requested notice pursuant to Rule 2002; (iv) the holders of Litigation Claims set forth on Exhibit A to the ADR Procedures; (v) the Insurer Parties; and (vi) any other party entitled to notice pursuant to Local Rule 9013-1(d).

WHEREFORE the Trust respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 10, 2022
       Houston, Texas

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Todd A. Atkinson*
Matthew P. Ward (admitted *pro hac vice*)
Todd A. Atkinson (TX Bar 24121426)
811 Main Street, Suite 3130
Houston, Texas 77002
Telephone: (346) 998-7801
Facsimile: (346) 998-5901
Email:  matthew.ward@wbd-us.com
       todd.atkinson@wbd-us.com

-and-

**KELLEY DRYE & WARREN LLP**
Eric R. Wilson (admitted *pro hac vice*)
Jason R. Adams (admitted *pro hac vice*)
Lauren S. Schlussel (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
Email:  ewilson@kelleydrye.com
       jadams@kelleydrye.com
       lschlussel@kelleydrye.com

*Counsel to the CEC Entertainment Trust*